Good morning, Your Honors. May it please the court, Ina Lipkin, on behalf of the petitioner. This is a case where the immigration judge found the petitioner to have filed a frivolous asylum application, which she had recanted during the asylum interview process before the case was referred to the court. The issue here is, could the petitioner have filed a waiver called a 601 waiver to excuse the fraud she committed in filing the application because she contended she was a victim of domestic violence and had filed an application called Special Rule Cancellation of Removal, which I will refer to as VAWA, which it commonly is referred to. And the other issue is, did the immigration judge abuse her discretion in not allowing to have the petitioner give testimony to explain the fraud that she committed? The petitioner concedes she did commit fraud. The petitioner concedes that if one commits fraud, the immigration judge has the authority to find the application to be frivolous. So the heart and soul of her claim is duress? Yes. Does either the paper she filed with the Board of Immigration Appeals or the appeal to this court use that word? She did not use the word duress, but all the language in her arguments pointed to the feeling of that she had no other choice, which in effect is duress. But no, she didn't use that particular term. What did she say? The crux of her argument was the kind of abuse she suffered put her in a state of mind that made her feel she had no other choice, which is really what duress means, but to file the false claim as she believed she would be forever separated from her child, from the husband whom she claimed to have suffered domestic violence. So that's her explanation for filing the asylum application that she did. What explains why she gave a different date for entry? I can understand if duress forced her to jump in and say, I've got this claim and whatever, whatever, but she advanced the date that she entered the country. Why did she do that? There is a very specific reason, Your Honors. Immigration law requires that an applicant file an application for asylum within one year of entry. So her actual entry was in 97 by indicating it was 2002 and filing within a year of that time. I think she filed early 2003. That would have made it timely. What did that have to do with duress? Well... So she knowingly indicated a false date of entry, knowing that she needed to do that to even be heard. That's correct. What did that have to do with duress? In order to prevail on the asylum claim, she would have to be eligible to apply for asylum. The only reason she applied for asylum was to ensure her legal presence in the United States. If she did not apply for asylum, or if she had put the actual date and the application was denied and she was ultimately removed to India, then the possibility of finding her daughter would be gone. So this pressure of having been separated from the daughter who was essentially kidnapped from her, and the fear of never being reunited with her, the need to remain in the United States in order to effectively find her, that was the pressure or duress she was under in making that fraudulent claim. Let me ask you this. Are you asking us today to make the determination whether this duress or whatever is a valid reason, or are you just asking us to send it back because she didn't have a hearing? I would say that she should have the opportunity to make an argument to allow duress to be a basis for a waiver, for the 601 waiver, because that does not necessarily exist. And this is the kind of exceptional circumstance where it would be useful for an applicant to be able to use that. In the context of other elements of asylum law, if one is, for example, accused of being a terrorist, that's a permanent bar, just like a frivolous finding is a permanent bar. And yet in some circumstances, duress could be a waiver. So she should be allowed to provide testimony to A, establish that she indeed was under duress, and number two, to see if that could be the basis for a waiver. The fact that the application was pre-terminated robbed her of that opportunity to make that sort of sympathetic way indicate that that could be a possibility, although she doesn't know of any case law that would allow it. Are you telling us that making the argument in the brief is or isn't enough? Does she have to have an actual hearing at which she appears? Represented by counsel, what is it you're asking us to do? Although if she was only allowed to brief the issue, that could be beneficial to her and beneficial, I think that in this situation, the government would most likely want her to give testimony to explain more details about what had occurred to her. I would imagine – oh, I can't speak for the government. I think we have your argument pretty well in hand. Judge Watford, do you have any questions? No, not at this time. Why don't you save the balance of your time and you can respond to the Attorney General, whom we'll hear from at this time. Ms. Nahas? Do I pronounce it correctly? Yes, sir. May it please the Court, Rebecca Nahas for the United States Attorney General. Carr admitted that she fabricated her entire asylum application, from her entry date to her marital status to the harm that she alleged that she experienced in India. She repeated the entire story to the asylum officer and only admitted that it was fraudulent when confronted with contradictory evidence. She received the warnings of filing a fraudulent asylum application. And so in light of these facts, the agency's frivolous finding satisfies the requirements under a The only issue that Petitioner really raises in challenging YL standards is that she didn't receive an opportunity to explain the impossibilities and inconsistencies. However, even if the government concedes that she can receive that opportunity where the fraud is clear on the opportunity to explain would be moot, because the opportunity to explain goes to whether the inconsistencies and implausibilities mean the application was fabricated versus just bad evidence or bad testimony. Yeah, but her position, as I understand it, is I was in this extraordinary circumstance, an abusive spouse who absconded with our daughter, and I was afraid if removed, I would never see her again, never be able to come back, at least for a long period of time. And out of desperation, I filed this application. And as I understand it, all they're seeking now is an opportunity to go back before the IJ and explain that. Certainly, Your Honor. This is sort of the immigration equivalent of a motion to dismiss, right? I'm sorry, I don't follow. Well, the pre-terminated is the immigration equivalent of a motion, grant of a motion to dismiss in a civil case. But I believe that she did receive the opportunity to explain, and that's consistent with this Court's precedent in Calcatean, which said that paper filings is sufficient to satisfy the opportunity to explain requirement. In that case, just like here, the government filed a motion to pre-terminate on the basis of a frivolous finding, and the respondent had, the alien had several months to respond with whatever arguments or explanations that she had. And the Ninth Circuit, this Court has said that that was sufficient opportunity. But she didn't have Ms. Lipkin at the IJ stage, did she? I'm not sure. She can tell us perhaps a little bit about that. My understanding is that the petitioner had a lawyer who was later disbarred. Well, that was the first round of proceedings. That attorney was disbarred, and the subsequent attorney filed a motion to reopen claiming ineffective assistance of counsel, which the Board granted. And so, in the new proceedings, that's the proceedings I'm talking about, where the government filed a motion to pre-terminate, explaining the frivolous finding, and petitioner filed a response in which she indicated this explanation. She said, you know, look, I filed this because I was afraid I wouldn't see my daughter if I was deported. So she received the opportunity to explain. So you're saying that paper response in a brief is sufficient. What about a hear? Doesn't that say that there should be a hearing? Doesn't Ninth Circuit precedent talk about an actual in-person hearing? In a hear? I don't believe I, I don't know for sure. I know a hear gave deference to the agency's framework in Y.L., which includes an opportunity to explain, but I don't think that a hearing, per se, is required. I'd have to look more closely, but this court's precedent in, I'm mispronouncing it, Calcaccia, said that the paper filings were sufficient. And the I.J. did consider the explanation in, in her decision. So not only did we have, did she have an opportunity to explain it, the I.J. considered it and found that there is no exception for a fear, essentially, of being deported. And that's, that's supported by the statute, which does not contain any exceptions. And it's also supported by the policy reason behind the frivolous finding, the frivolous bar, which is to prevent petitioners from lying to the government. And it would swallow the rule if this court found that anyone who has a fear of deportation, however sympathetic that fear is, would be excused from lying to the government to obtain a benefit, a benefit that's in place to protect aliens with real fear of harm. Can I, can I ask you this, counsel? So is the government's position that if somebody had a true duress defense or true duress explanation, that that would be, that, that, you know, that would be enough to get around the D6 bar? Or are you, I mean, yeah, I'm just trying to figure out, are you just saying that on these facts, the petitioner just didn't make out a duress defense? Or are you saying that a duress defense just as a matter of law is never available? I'm not sure I can speak to that, but I do, I, duress, I believe goes to the deliberateness element of the frivolous finding. And so in order for the attorney general to make a frivolous finding, he has to show, there has to be a preponderance of the evidence that the alien made a deliberate misrepresentation or in the asylum application. So it has to be deliberate. So that I think the petitioner is basically conceding that, yeah, she knew that what she was saying at the time was false. That's not, that doesn't seem to be in contention. She's Your Honor, I feel that it's not my place to speak before the board on this issue because she didn't present or frame this claim as a duress claim. She presented it as essentially, I'm afraid of deportation and that should be an exception to the, to the bar. She didn't say that, you know, I had a gun to my head and that's why I did it. So the agency didn't interpret it in that, in that framework and that claim is not exhausted. And I, I shouldn't speak before the board on that issue. Okay. Okay. I think we understand your position. Thank you for coming in today. We'll hear a rebuttal at this time. Ms. Lipkin. Um, in answer to your previous question, no, I did not represent the petitioner in the lower court. Um, this court has on many occasions stated that even when a petitioner doesn't expressly, uh, give, uh, an argument using specific language, for example, a motion to reopen doesn't say motion to reopen, but the body of the, of the motion clearly indicates this is a request for a motion to reopen. That's how the court will construe it. And in the same vein, the court should construe the respondent's, uh, the petitioner's arguments before the board and before this court to mean that she operated under duress. Um, and really the argument is even though the regulations don't specifically state a 601 waiver or in the case of, uh, Kulkachan, which the government cited, um, a 212 waiver, which is essentially the same thing. Um, petitioner argues that there is room for that waiver. It is not expressly excluded from, uh, applicability in a case such as this one. Thank you. Thank you. Don't send any other questions. Thank you both for your arguments. Very interesting case. Stand submitted for decision.
judges: Hawkins, Watford, Rothstein